Walter ROBINSON, Plaintiff,

v.

THE GLOBE NEWSPAPER CO. and
Mitchell Zuckoff, Defendants.

No. CIV. CV–98–44–B.

United States District Court,
D. Maine.

Nov. 9, 1998.

Joseph Jabar, Daviau, Jabar & Batten, Waterville, ME, for Plaintiff.

Harold Friedman, Friedman, Babcock & Gaythwaite, Portland, Jonathan Albano, Bingham, Dana & Gould, Boston, MA, for Defendants.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

In this diversity action, Plaintiff Walter Robinson alleges that Defendants, The Globe Newspaper Co. ("Globe") and reporter Mitchell Zuckoff ("Zuckoff"), defamed him in a series of articles appearing in the Boston Globe and The Boston Sunday Globe between February 10, 1996 and March 6, 1996. Defendants filed a Motion for Summary Judgment. For the reasons set forth below, Defendants' Motion is GRANTED.

### I. BACKGROUND

Plaintiff was employed as a police officer and detective with the Boston Police Department for 25 years. In early 1996, the Globe published a total of nine articles concerning an investigation of Plaintiff and his partner, Detective Kenneth Acerra, conducted by the anti-corruption unit of the Boston Police Department. The first of these articles was co-authored by Zuckoff.

The articles alleged that Plaintiff had engaged in various corrupt activities while a detective, including stealing thousands of dollars from drug dealers whom he arrested, falsifying affidavits for search warrants, and arranging for the dismissal of legitimate criminal charges.

Plaintiff resigned from the Boston Police Department on February 9, 1996. He was indicted by a federal grand jury on March 10, 1997, and pled guilty approximately one year later to Counts 1, 14, and 20 of a Superseding Indictment.[1] He currently is serving a three-year sentence at a federal prison in Kentucky.

One month prior to pleading guilty, Plaintiff filed this defamation suit in Maine Superior Court. In his Complaint, Plaintiff alleges that the following statements in the Globe articles were false and defamatory: 1) Plaintiff stole from drug dealers; 2) Plaintiff falsified search warrant applications; 3) Plaintiff arranged for the dismissal of criminal charges; 4) Plaintiff owned a gas station with drug dealer and gun runner, Joseph Murray ("Murray"); 5) Plaintiff and Murray owned homes together on the same lake; 6) Plaintiff manufactured evidence against a fellow police officer; 7) Plaintiff owned real estate valued at $500,000; and 8) Plaintiff was stationed in a police district known by some as a "haven for rogue detectives." The case was removed to federal court on March 3, 1998, and Defendants subsequently filed a Motion for Summary Judgment.

### II. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995). In responding to a properly supported Motion for Summary Judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue

---

**1.** Count 1: 18 U.S.C. § 371—Conspiracy to Commit Offenses Against the United States

Count 14: 18 U.S.C. § 241—Conspiracy to Violate Constitutional Rights

Count 20: 26 U.S.C. § 7206(1)—Making and Subscribing to False Income Tax Returns

for trial." Fed.R.Civ.P. 56(e). A party normally will not be able to defeat summary judgement with an affidavit that directly contradicts that party's earlier affidavit or sworn testimony, unless the affidavit is accompanied by a credible explanation for the contradiction. *See Colantuoni v. Calcagni & Sons,* 44 F.3d 1, 4–5 (1st Cir.1994).

## III. DISCUSSION

■ In order to establish common law defamation, a plaintiff must show:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Lester v. Powers,* 596 A.2d 65, 69 (Me.1991); *see also Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) (holding Constitution requires plaintiff to demonstrate falsity where plaintiff is private figure and alleged defamatory material published by media defendant is of public concern). In their Motion for Summary Judgment, Defendants contend that there is no genuine issue of material fact as to the "falsity" element of Plaintiff's defamation claim. Defendants argue that by pleading guilty to three counts of the Superseding Indictment, Plaintiff has admitted the substantial truth of three of the alleged defamatory statements: 1) that Plaintiff stole from drug dealers; 2) that Plaintiff falsified search warrant applications; 3) that Plaintiff arranged for the dismissal of criminal charges. Defendants argue that Plaintiff is precluded from disclaiming these admissions by application of collateral estoppel and judicial estoppel.

As for the five remaining alleged defamatory statements, Defendants assert that Plaintiff has not produced any evidence demonstrating falsity. Defendants also maintain

that even if not literally true, these remaining statements are not actionable because they did not sufficiently damage Plaintiff's reputation beyond the damage caused by publication of the other true statements.

In his Response to Defendants' Motion for Summary Judgment, Plaintiff does not deny that three of the alleged defamatory statements about which he complains describe conduct to which he ultimately pled guilty in federal court, namely, stealing from drug dealers, falsifying search warrant applications, and arranging for the dismissal of criminal charges. Plaintiff does argue, however, that admissions incidental to his guilty plea should not be given preclusive effect in this case, and that his "unwithdrawn guilty plea should be admissible and its weight [ ] be determined by a jury." [2] (Pl.['s] Resp. to Defs.['] Mot. Summ. J. at 2.)

In support of his position, Plaintiff relies on two cases which hold that a party's prior guilty plea is admissible at a subsequent civil trial as non-conclusive evidence of liability. In *Ando v. Woodberry,* 8 N.Y.2d 165, 203 N.Y.S.2d 74, 168 N.E.2d 520, 523–24 (N.Y. 1960), the court held that a criminal defendant's plea of guilty to a traffic offense was admissible against him as an admission of a party-opponent at a subsequent trial for negligence, and noted that the defendant was entitled to explain to the jury why the plea should be given no weight. Similarly, in *Hinshaw v. Keith,* 645 F.Supp. 180, 184 (D.Me.1986), the court reversed a magistrate's finding that introduction of a party's prior misdemeanor plea at trial was barred by Fed.R.Evid. 803(22). The court held that the plea was potentially admissible against the party as an admission pursuant to Fed. R.Evid. 801(d)(2) subject to the balancing prescribed by Fed.R.Evid. 403. *See id.* Based on these cases, which indicate that a prior guilty plea may be admitted and repudiated at trial, Plaintiff argues that his plea should not be given preclusive effect at the summary judgment stage.

**2.** Specifically, Plaintiff proposes that he be allowed the opportunity to persuade a jury that, in fact, he did not commit the acts to which he pled guilty, and that his plea was motivated by a fear

that he would not survive a long sentence in a maximum security prison and by a belief that extended incarceration would have an adverse impact on his wife and young children.

This argument misses the mark. In deciding Defendant's Motion for Summary Judgment, this Court is not confronted, as were the *Ando* and *Hinshaw* courts, with the treatment of a guilty plea at trial under the rules of evidence. A plea's admissibility and weight at trial has no bearing on whether repudiation of a plea by a party creates a genuine issue of material fact sufficient to permit that party to survive summary judgment.[3] Instead, the Court looks to the law of collateral and judicial estoppel to determine whether a guilty plea is sufficient evidence of its contents to warrant summary judgment.

**Collateral Estoppel**

■ Collateral estoppel, also known as "issue preclusion," prevents relitigation of an issue which already has been litigated and decided in a previous case. *See generally* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 4416 (1983). "A party may move for summary judgment on the ground that . . . the earlier litigation actually determined an issue crucial to both actions so that an application of collateral estoppel entitles the movant to a judgment as a matter of law in the second action." *Id.* at § 2735. Where, as here, a federal court has subject matter jurisdiction pursuant to diversity of citizenship, the First Circuit has held that federal law governs the preclusive effect of a prior federal court judgment. *See Apparel Art Int'l, Inc. v. Amertex Enterprises*, 48 F.3d 576, 582–83 & n. 7 (1st Cir.1995).

■ The federal doctrine of collateral estoppel precludes a party from relitigating an issue if:

1) the party had a "full and fair opportunity to litigate" the issue in an earlier action, and

2) the issue was finally decided in that action, and

3) the issue was decided against that party, and

4) determination of the issue was essential to the earlier judgement.

*In re Public Service Co.*, 848 F.Supp. 318, 325 (D.R.I.1994) (citing *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992)). Applying this test, the Court finds that Plaintiff is collaterally estopped from asserting the falsity of Defendants' statements reporting that Plaintiff had stolen money from drug dealers, falsified search warrant applications, and arranged for the dismissal of criminal charges. First, Plaintiff had a "full and fair opportunity to litigate" the issue of his guilt: he was represented by counsel in the criminal proceeding and the seriousness of the charges against him, as well as the consequences of his plea as explained by the court, provided sufficient incentive to assert his innocence. Second, the plea constituted a final judgment in the criminal action. *See United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Third, Plaintiff is obviously the party involved in the earlier plea, and as Plaintiff acknowledges in his Response to Undisputed Material Facts, the conduct which was the subject of his plea is the same conduct described by the alleged defamatory statements. (Pl.['s] Resp. Undisp. Mat. Facts at ¶ 2.) Finally, judicial determination of a factual basis for the criminal charges was a necessary part of accepting Plaintiff's plea pursuant to Rule 11(f) of the Federal Rules of Criminal Procedure. Plaintiff allocuted to the behavior described in the relevant counts of the Superseding Indictment before the presiding judge at the Rule 11 hearing.

Plaintiff has argued that a plea of guilty should be treated differently than a conviction after trial for purposes of collateral estoppel. The First Circuit has rejected this theory, however, in collaterally estopping a taxpayer who pled guilty to criminal tax evasion from relitigating the issue in a civil action against the I.R.S to recover alleged overpaid taxes and fraud penalties. *See*

---

**3.** Plaintiff is not the first to mistakenly conflate the admissibility of a prior judgment at trial and the preclusive effect to be accorded a prior judgment at the summary judgment stage. In *Pattershall v. Jenness*, 485 A.2d 980 (Me.1984), the Supreme Judicial Court of Maine noted that in a previous case, it had "unintentionally equated the admissibility of a conviction under M.R.Evid. 803(22) with the applicability of collateral estoppel to a prior conviction." We now agree that the evidentiary rule "has nothing to do with the use of res judicata or collateral estoppel." *Id.* at 983 n. 1 (quoting Richard H. Field & Peter L. Murray, *Maine Evidence*, § 207 (1976)).

*Fontneau v. United States,* 654 F.2d 8, 10 (1st Cir.1981). Likewise, the Seventh Circuit granted summary judgment to a civil plaintiff based on facts contained in the defendant's plea agreement. In that case, the Court noted:

> Just as an affidavit in which a witness tries to retract admissions that he made earlier in his deposition is normally given no weight in a summary judgement proceeding, so a witness should not be permitted by a subsequent affidavit to retract admissions in a plea agreement. Admissions—in a guilty plea, as elsewhere—are admissions, they bind a party; and the veracity safeguards surrounding a plea agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition.

*Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir.) (citations omitted), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). The Court concurs with the First and Seventh Circuits and consequently finds that Plaintiff is collaterally estopped from relitigating the substance of his guilty plea in this action.

### Judicial Estoppel

 Plaintiff also is precluded from litigating the falsity of the alleged defamatory statements under the doctrine of judicial estoppel. Unlike collateral estoppel, which is primarily concerned with finality and judicial economy, the purpose of judicial estoppel is to preserve the integrity of the judicial system. *See generally,* Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw. U.L.Rev. 1244 (1986). Judicial estoppel is a tool by which courts can prevent litigants from asserting contrary positions in different forums. *See Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 211–12 (1st Cir.1987). In the First Circuit, application of judicial estoppel requires establishment of the following criteria: 1) a litigant must have made a bargain with the tribunal of the first proceeding by making representations to the tribunal to obtain a benefit; 2) the position taken in the second proceeding must be inconsistent with the one successfully asserted by the same party in a prior proceeding regarding a matter material to the outcome of the prior proceeding; and 3) there must be deliberate dishonesty by the litigant or serious prejudice to judicial proceedings or the position of the opposing party. *See UNUM Corp. v. United States,* 886 F.Supp. 150, 158 (D.Me.1995) (citations omitted).

While no case in the First Circuit has yet applied judicial estoppel in the context presented here, the Fourth Circuit has upheld a district court's invocation of judicial estoppel in a case almost identical to the one at bar. *See Lowery v. Stovall,* 92 F.3d 219, 224 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997). In *Lowery,* a civil plaintiff who had pled guilty to maliciously causing bodily injury to a police officer with intent to kill was precluded from relitigating that conduct in a § 1983 action against the officer for an alleged violation of the plaintiff's Fourth Amendment rights. After noting that the plaintiff had received a drastically reduced sentence as a result of pleading guilty, the Court observed:

> Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as a plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, chutzpah, is too much to take. There certainly should be an estoppel in such a case.

*Id.* at 225 (quoting Geoffrey Hazard, *Revisiting the Second Restatement of Judgments; Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 578 (1981)).

Here, Plaintiff admits that, like the plaintiff in *Lowery,* he obtained substantial benefit from pleading guilty in the form of a significant reduction in the term of his incarceration and the favorable circumstances under which he would be required to serve his sentence. *See* Pl.['s] Aff. at ¶ 5, 9. Plaintiff's position in this proceeding also is clearly inconsistent with his assertions at the time of his plea. Finally, the Court finds that Plaintiff was then or is now being inconsistent regarding the conduct that was the subject of his plea. The Court therefore concludes that application of judicial estoppel is appropriate in this case and precludes Plaintiff from contesting the truth of matters covered by his guilty plea.

**Remaining Alleged Defamatory Statements**

 At oral argument, Plaintiff advanced an alternate ground by which to avoid summary judgment. He argued that even if he was estopped from asserting the falsity of those statements alleging conduct outlined in his guilty plea, he should be allowed to proceed with his defamation claim on the basis of five other defamatory statements regarding alleged conduct not covered by his plea. The Court rejects this argument. As stated above, in responding to a properly supported Motion for Summary Judgment, "an adverse party may not rest upon the mere denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Here, Plaintiff has come forward with no evidence demonstrating a genuine issue of material fact as to the substantial falsity of the remaining statements. *See McCullough v. Visiting Nurse Service of Southern Maine, Inc.*, 691 A.2d 1201, 1204 (Me.1997) (finding no defamation where statement was substantially, but not literally, true).[4] Moreover, given the Court's conclusions above, there can be no genuine issue of material fact as to the inferences to be drawn from these statements—that Plaintiff engaged in illegal activities and had illegitimate sources of income.

### IV. CONCLUSION

As Plaintiff has failed to demonstrate a genuine issue of material fact as to the falsity element of his defamation claim, Defendants' Motion for Summary Judgment is GRANTED.

*SO ORDERED.*

---

**4.** Citing *Herbert v. Lando*, 781 F.2d 298, 312 (2nd Cir.1986), *cert. denied by*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986), Defendants' urge the Court to find that the five remaining allegedly defamatory statements, even if false, do not harm Plaintiff's reputation beyond the harm inflicted by the published truth. The so-called "incremental harm" doctrine is not compelled by the First Amendment, but may be imposed as a matter of state tort law. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 523–24, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Although Maine evidently has not considered this issue, the Court finds the doctrine persuasive, but does not reach the issue in the disposition of this case.